1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                          DISTRICT OF IDAHO

10                          ----oo0oo----

11

12   ORALIA GARCIA,                  CIV. NO. 1:13-284 WBS

13              Plaintiff,           MEMORANDUM AND ORDER RE: MOTION
                                     FOR SUMMARY JUDGMENT
14        v.

15   STATE OF IDAHO, Department of
     Health & Welfare,

16

17              Defendant.

18                          ----oo0oo----

19

20           Plaintiff filed this action against defendant State of

21   Idaho Department of Health & Welfare ("Department"), alleging the

22   Department discriminated against her because of her race, sex,

23   and age in violation of Title VII of the Civil Rights Act of 1964

24   ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), the Age Discrimination

25   in Employment Act ("ADEA"), 29 U.S.C § 623(a)(1), and the implied

26   covenant of good faith and fair dealing.  Presently before the

27   court is defendant's motion for summary judgment pursuant to

28   Federal Rule of Civil Procedure 56.

                                  1

I.  Factual and Procedural Background

Plaintiff, a fifty-six-year-old Hispanic woman, (Compl. ¶ 2 (Docket No. 1)), was terminated by defendant after thirty-two years of employment, (Garcia Aff. ¶ 5 (Docket No. 16-2)).  For the ten years leading up to her termination, plaintiff held the position of Electronic Benefit Transfer ("EBT") Operations Supervisor, in which she oversaw the transfer of food, cash, and child support benefits.  (Garcia Aff. ¶ 3.)  Her duties included participating in the oversight of the Department's contractual relationships with financial institutions involved in administering such transfers.  (Id.)  Prior to March 2012, the Department never gave plaintiff a formal write-up for poor performance or subjected her to any disciplinary action.  (Id. ¶¶ 4-5.)  In a performance review of plaintiff's work in the 2011 calendar year, plaintiff's supervisor Michael Pearson gave her the rating of "solid, sustained performance."  (Id. ¶ 6; Garcia Aff. Ex. A.)

Prior to her discharge, plaintiff obtained outside employment as a real estate agent.  Because the Department had a policy requiring employees to seek its approval before beginning outside employment, plaintiff applied for approval and the Department granted it.  (Garcia Aff. ¶ 9.)  The Department sent plaintiff an information packet containing its policies on outside employment, (Pearson Aff. Ex. A), but the parties dispute whether plaintiff was specifically instructed not to perform real estate work during work hours or that she was prohibited from sending personal emails from her work account, (Pearson Aff. ¶ 10; Garcia Aff. ¶ 14.)

On March 8, 2012, plaintiff's supervisor, Michael
Pearson, and a human resources specialist, Maria Gamet, met with
plaintiff to address the way plaintiff had handled a contract
between the Department and JP Morgan. (Garcia Aff. ¶ 18.)  At
the meeting, Pearson directed plaintiff not to disclose or
otherwise communicate with anyone information regarding the
review. (Gamet Aff. ¶ 5; Pl.'s Statement of Facts ¶ 16 (Docket
No. 16-1).)[1]

Parties dispute the purpose of the March 8 meeting.
Gamet and Pearson state they met with plaintiff to understand
what communications were made between Department employees and JP
Morgan. (Gamet Aff. ¶ 4 (Docket No. 14-13); Taylor Aff. ¶ 5
(Docket No. 14-5).)  According to plaintiff, Pearson and Gamet
told plaintiff that Paul Spannknebel, the Administrator of the
Division of Operational Services, (Young Aff. ¶ 4 (Docket No. 14-
4)), had met with Deputy Director Paul Taylor and expressed his
concerns about the way plaintiff was handling the contract,
particularly due to a potential conflict of interest that could
cause the Department to lose its authority with the Department of
Purchasing. (Id. ¶ 18.)

Plaintiff stated in her deposition that in 2010,
Spannknebel had made several inappropriate sexual advances toward

---

[1]    In an email to a fellow Department employee Tonia
Walgamott, plaintiff told Walgamott that plaintiff was supposed
to keep the meeting "on the QT."  (Gamet Aff. Ex. J at 541.)
Plaintiff does not dispute that she was instructed not to discuss
the contract review; she states instead that no one specifically
warned her that discussing the review with someone outside the
meeting would lead to discipline.  (Garcia Aff. Ex. E ("Garcia
Dep.") at 60:3-6 (Docket No. 16-7).)

her, which she rejected.  (Garcia Dep. at 19:11-34:25.)  She alleges these encounters with Spannknebel are connected to her discharge.  (Compl. ¶¶ 14-15.)

Following the meeting, Deputy Director Taylor requested a review of plaintiff's email and internet use.  (Taylor Aff. ¶ 5.)  Information Technology retrieved emails sent from Garcia's work account.  (Id.)  The emails, which defendant attaches in support of its motion, revealed that 1) plaintiff had been sending emails relating to her outside real estate business from her work account during work hours,[2] and 2) she divulged details regarding the March 8 meeting to Department employee Tonia Walgamott.  (Taylor Aff. Ex. A; Gamet Aff. Exs. G-J.)

On March 15, 2012, Gamet and Pearson met with plaintiff to discuss her use of her Department email account to perform work as a real estate agent and her emails to Walgamott regarding the March 8 meeting.  (Taylor Aff. ¶ 9; Garcia Dep. at 67:9-69:2.)  Gamet and Pearson also expressed concern over what they believed were disparaging comments plaintiff made in her emails regarding other employees.  (Garcia Dep. 68:8-10.)[3]

On April 12, 2012, Deputy Director Taylor served plaintiff with a Notice of Contemplated Disciplinary Action.

_____

[2]    Plaintiff concedes she sent personal emails related to her outside employment as a real estate agent during Department working hours, but states she did not send them during her work time.  (Garcia Aff. ¶ 15.)

[3]    Plaintiff's emails reveal she called Pearson a "micromanager," (Gamet Aff. Ex. D at DHW0565); accused John Wheeler of "not doing anything or knowing anything," (id. at DHW0564); and described Program Specialist Beverly Berends as "incompetent," (id.).

(Gamet Aff. Ex. D.)  According to the notice, the Department was considering dismissing plaintiff because she demonstrated insubordination by speaking with other employees regarding the Department's review of a sensitive matter; used her work computer for her outside employment during work hours; sent an excessive amount of personal email from her work computer; and failed to treat other employees with courtesy, dignity, and respect.  (Id. at 548.)  Gamet and Taylor met with plaintiff on April 17 to further discuss these charges.  (Gamet Aff. ¶ 11.)  On April 25, 2012, plaintiff was dismissed.  (Taylor Aff. Ex. A at 623.)[4]  At that time, she was fifty-five years old.  (Garcia Dep. at 102:17.)  Plaintiff unsuccessfully appealed her termination, contesting the charges against her and alleging that her rejection of Spannknebel's advances were a motive for her termination.  (Young Aff. Ex. A.)  Plaintiff's position remained vacant from April 25, 2012 until January 7, 2013, (Young Rebuttal Aff. ¶ 2 (Docket No. 17-1)), when the Department replaced plaintiff with Alice Porter, a white female in her early thirties, (id.; Garcia Aff. ¶ 21).

Plaintiff filed this action, alleging that Spannknebel blamed the JP Morgan contract problems on plaintiff because she rebuffed his sexual advances, (Compl. ¶ 15), and that the Department terminated her because of her sex, race, and age, whereas it treated other white male employees who engaged in

---

[4]  In the dismissal letter, the Department stated there were only two areas where plaintiff's integrity had come into question, her sharing of confidential information with a subordinate and her performance of outside work during regular work hours. (Taylor Aff. Ex. A at 620.)

similar conduct with more leniency, (id. ¶ 23).  Defendants now move for summary judgment, contending that plaintiff's termination was not a result of discrimination in violation of anti-discrimination law or the contractual covenant of good faith and fair dealing.  (Docket No. 14.)

## II.  Discussion

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine dispute is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Anderson, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id.

### B. Sex and Racial Discrimination

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff has brought claims under Title VII for discrimination because of her race and sex.

"To proceed to trial, the plaintiff need only raise a genuine dispute as to whether [plaintiff's protected trait] was a motivating factor in the challenged decision." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1041 n.7 (9th Cir. 2005). A plaintiff may prove a case of discrimination by invoking the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as plaintiff does here. Under this framework, plaintiff must first establish a prima facie case showing that 1) she belongs to a protected class of persons; 2) she satisfactorily performed her job; 3) she suffered an adverse employment action; and 4) her employer treated her differently than similarly situated employees not of the same protected class. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802). The degree of proof necessary to establish a prima face case is "minimal and does not even need to rise to the level of a preponderance of the evidence." Lyons v. England, 307 F.3d 1092,

1  1112 (9th Cir. 2002).

2          If the plaintiff successfully establishes her prima

3  facie case, the "burden of production, but not persuasion, []

4  shifts to the employer to articulate some legitimate,

5  nondiscriminatory reason for the challenged action." Chuang v.

6  Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000)

7  (citing McDonnell Douglas, 411 U.S. at 802).  Assuming the

8  employer carries its burden, the plaintiff "must [then] show that

9  the articulated reason[s] [are] pretextual 'either directly by

10 persuading the court that a discriminatory reason more likely

11 motivated the employer or indirectly by showing that the

12 employer's proffered explanation is unworthy of credence.'"

13 Chuang, 225 F.3d at 1124 (citing Tex. Dep't of Cmty. Affairs v.

14 Burdine, 450 U.S. 248, 256 (1981)).  If the plaintiff proves

15 pretext indirectly, circumstantial evidence of pretext must be

16 "specific and substantial" to survive motion for summary

17 judgment, but if directly, "any indication of discriminatory

18 motive . . . may suffice to raise a question that can only be

19 resolved by the factfinder." Lyons, 307 F.3d at 1113.

20          1.  Plaintiff's Prima Facie Showing for Her Sex

21 Discrimination Claim

22          Plaintiff easily satisfies the first and third elements

23 of her prima facie case because as a Hispanic woman she is a

24 member of a protected class, and her termination qualifies as an

25 adverse employment action.  (See Def.'s Mem. at 11 (conceding

26 plaintiff meets these elements).)

27          Plaintiff also raises a genuine factual dispute

28 regarding the second element, that she was performing her job

8

satisfactorily at the time of her discharge.  For thirty-two years, plaintiff never received a negative performance evaluation.  (Garcia Aff. ¶ 5.)  The most recent evaluation before the Department discharged plaintiff effusively complimented her, stating, for example: "Orie has a great relationship with the three EBT Specialists she manages," (Garcia Aff. Ex. A at 4); "A direct result of [her] proactive approach is an improved working relationship with our biggest customer, the Division of Welfare. . . . I have confidence that Orie will be able to take this customer communication to the next level," (id. at 5); "Decision making is one of Orie's key strengths.  Her intimate knowledge of the EPS system and IBES is a formidable tool when issues arise," (id.).  By the time of her termination, plaintiff had been performing her job as EBT Operations Supervisor to the Department's satisfaction for the ten years she served in that role.  (Garcia Aff. ¶ 4.)  This showing exceeds the minimal showing required at the prima facie stage.  See Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 660 (9th Cir. 2002) (holding that the prima facie showing only requires a "minimal inference" that an employee's job performance was satisfactory and finding that evidence that there were no formal write-ups or disciplinary notices against employee, together with his own positive self-assessment, was sufficient for that inference).

Defendant argues that plaintiff's conduct just prior to her dismissal rendered her unqualified for her position.  (Def.'s Mem. at 11.)  But defendant did not discover plaintiff's alleged transgressions relating to her email usage until Deputy Director

9

Taylor asked IT to retrieve data from plaintiff's computer. From this fact a reasonable juror could conclude plaintiff's conduct had no impact on plaintiff's work product or her fundamental duties as EBT Operations Supervisor. Furthermore, although plaintiff divulged confidential information to a fellow employee, it is disputed whether this had an impact on her job performance. Disputed material issues of fact exist as to whether plaintiff was satisfactorily performing her job.

Plaintiff has a more difficult time meeting the fourth element of the prima facie showing for her sex discrimination claim, that a similarly situated employee was treated more favorably. "Similarly situated" means "similarly situated in all material respects." See Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006) (citing cases). Plaintiff must point to an employee who engaged in conduct of comparable seriousness to hers. Cornwell, 439 F.3d at 1028. Plaintiff points to three white, male comparators: Scott Earle, Seth Wheeler, and Bob Curl. (Compl. ¶¶ 24-26; Def.'s Mem. at 7.)

The Department found that Earle, like plaintiff, spent excessive time on non-work-related internet sites during regular work hours. (Young Aff. ¶ 8.) In 2009, an employee complained about Earle and Information Technology staff reviewed Earle's internet use. (Id.) On April 9, 2009, the Department reprimanded Earle, but it did not discharge him. (See id.) Unlike Earle, plaintiff was never given a warning regarding her internet usage. (Garcia Aff. ¶ 16.) However, because it is undisputed that plaintiff also divulged confidential information to a Department employee who was not party to the contract

review, Earle was not similarly situated "in all material respects." See Moran, 447 F.3d at 755 (holding that although there were some similarities between employees' circumstances, they were not similar "in all material respects" (internal quotations omitted)); Collins v. Potter, 431 Fed. Appx. 599, 600 (9th Cir. 2011) (holding plaintiff and comparator were not similarly situated because they were not subject to the same employment agreement nor was the other employee dishonest or insubordinate to a supervisor); Shumway v. United Parcel Service, 118 F.3d 60, 64 (2d Cir. 1997) (holding that although plaintiff and comparator both engaged in intracompany dating, there were "so many distinctions" between the two employees, including the gravity of the misconduct and the fact that there were other complaints of misconduct against plaintiff, that it could not be concluded that plaintiff "engaged in comparable conduct"). Even assuming Earle's internet use was as excessive as plaintiff's, Earle did not reveal confidential information after being warned not to by his supervisors, which makes his circumstances distinguishable.

The parties dispute the details of Wheeler's conduct. According to plaintiff, it was common knowledge that Wheeler often parked cars he was attempting to sell in the Department parking lot of its Pocatello office, (Garcia Aff. ¶ 20), but the Department never disciplined him, (Young Aff. ¶ 10). Monica Young, a human resources manager at the Department, states that Wheeler was approved for selling used cars in his spare time, and parked a car with a for-sale sign in the window in a non-Department parking space. Even if Wheeler had parked cars in the

Department parking lot, no reasonable juror could conclude that Wheeler's conduct was similar to plaintiff's.  In addition to showing that plaintiff sent from her work email account regarding her outside real estate business, plaintiff's emails reveal she disclosed information to other employees that she was asked to keep confidential.  Furthermore, plaintiff has not provided evidence showing that Wheeler's supervisors were aware that Wheeler was engaged in any misconduct at the time.[5]

Plaintiff had accused Curl in November 2011 of saving pornography to the Department's shared drive, but a further investigation revealed that there was insufficient evidence to conclude he saved the photograph.  (Young Aff. ¶ 9.)  Plaintiff has offered no evidence showing the Department had sufficient reasons to discipline Curl for the incident.  Curl is thus not "similarly situated" to plaintiff, because in plaintiff's case the Department had evidence showing she authored emails it believed violated its policies.

The requirement that plaintiff must point to a comparator is not necessarily applicable in every factual situation, so long as a plaintiff shows "circumstances surrounding the adverse employment action that give rise to an

---

[5]    Plaintiff argues that "[j]ust because no complaint was made and/or no violation was found against Mr. Wheeler does not mean such conduct was not taking place or that Mr. Wheeler's supervisors didn't approve by acquiescence."  (Pl.'s Mem. at 10.) While it is true that the absence of evidence of a formal complaint does not preclude finding Wheeler was "similarly situated," plaintiff has provided no evidence raising the inference that the Department was aware of and "approve[d] by acquiescence" Wheeler's conduct beyond stating it was "common knowledge," (Garcia Aff. ¶ 20).

inference of discrimination." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). But where a plaintiff invokes a comparison between her and other employees to raise such an inference, as plaintiff does here, she must satisfy this element. Id.

The only other evidence of sex discrimination plaintiff offers is that Spannknebel made unwelcome and inappropriate sexual advances toward her from October 2010 through February or March of 2011, which she rejected. (Garcia Dep. at 19:11-34:25.) This included a forcible kiss in public in the presence of other Department employees. (Id.) While these facts could arguably provide a basis for a sexual harassment claim, plaintiff did not allege such a claim in her Complaint. Instead, plaintiff relies on the Spannknebel incidents to raise an inference of discrimination. Plaintiff states Gamet and Pearson told her that Spannknebel felt she had mishandled the contract, which prompted the review. (Garcia Aff. ¶ 18.)

The Supreme Court has held that where a supervisor performs an act motivated by animus that is designed to lead to an adverse employment action, if that act is also the proximate cause of an adverse employment action, then the employer can be liable for employment discrimination. Staub v. Proctor Hosp., --- U.S. ----, 131 S. Ct. 1189, 1194 (2011). In Staub, the plaintiff's supervisors made false reports and issued him a corrective action, all of which the plaintiff alleged were fabricated and motivated by animus toward his military obligations. Id. at 1189. The employer relied on those reports in deciding to fire the plaintiff. Id. The Court reasoned that

"[a]n employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors." Id. at 1192-93. An employer cannot shield itself from suits for the intentionally discriminatory acts of supervisors designed to cause an adverse employment action by simply isolating a personnel official from those supervisors. Id. at 1193. The Court further held, however, that "if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . . then the employer will not be liable." Id. at 1193.

Even if plaintiff could show that Spannknebel ordered the contract review because plaintiff had refused his advances, this would still not be enough to raise an inference that the Department discharged plaintiff because of her sex. Plaintiff has offered no evidence that Spannknebel's expressed, and allegedly vindictive, dissatisfaction with her performance on the JP Morgan contract was the proximate cause for her discharge. To the contrary, the Department's investigation resulted in plaintiff's discharge "for reasons unrelated" to Spannknebel's comments regarding her mishandling of the contract, the "original biased action." See Staub, 131 S. Ct. at 1193. Deputy Director Taylor, not Spannknebel, decided to review plaintiff's work emails. (Taylor Aff. ¶ 5.) The Department states that the contents of those emails, and not plaintiff's mishandling of the contract, provided the basis for her discharge, (Taylor Aff. ¶ 9), and plaintiff offers no evidence to raise a genuine dispute

1  of fact on this issue.[6]

2       By failing to show similarly situated Department

3  employees who were male received more favorable treatment than

4  plaintiff, plaintiff has failed to make out a prima facie case of

5  sex discrimination.  Viewed in the light most favorable to

6  plaintiff, the evidence in the record may show that defendant's

7  discharge of plaintiff was callous and unfair, but it does not

8  give rise to an inference that the Department discriminated

9  against plaintiff because of her sex.

10       2.  Plaintiff's Prima Facie Showing for her Race Claim

11       Plaintiff can meet the fourth element of a prima facie

12  showing of discrimination by showing the Department replaced her

13  with someone who was outside her protected class.  See Jones v.

14  Los Angeles Comty. Coll. Dist., 702 F.2d 203, 206 (9th Cir.

15  1983).  Plaintiff meets the fourth element on her race claim,

16  because after firing her, the Department filled her position with

17

18       [6]  In Staub, the Court also suggested that a supervisor's
   "biased report" could be taken into account when evaluating
19  whether the adverse employment was, apart from the supervisor's
   evaluation, entirely justified.  Staub, 131 S. Ct. 1186 at 1193.
20  However, the "biased report" at issue in Staub is distinguishable
   from Spannknebel's involvement in plaintiff's case.  In Staub,
21  the plaintiff alleged the "biased reports" were totally
   fabricated.  Id.  Here, plaintiff's emails, the content of which
22  is not in dispute, reveal that several people on the Department
   contracts team were concerned that plaintiff's conduct regarding
23  the JP Morgan contract compromised the Department's authority.
   (Gamet Aff. Ex. J at DHW0544.)  Spannkenebel's comments on
24  plaintiff's handling of the contract are thus corroborated by the
   views of other employees.  They are a far cry from the unfounded
25  "biased report" the Court discusses in Staub.  Therefore, there
   is no basis to find that Spannknebel's comments, which plaintiff
26  states she learned about through Pearson and Gamet, serve as
   evidence that her discharge was unjustified.
27

28                                15

a woman who was white.  From March 15, 2012, when the Department

placed plaintiff on administrative leave, until January 7, 2013,

John Wyatt, an Electronic Benefit Transfer Specialist performed

ninety percent of plaintiff's former duties.  (Young Rebuttal

Aff. ¶ 3.)  While Wyatt was eligible for plaintiff's former

position, he advised the Department to hire someone else because

he intended to retire.  (Id. ¶ 4.)  In January, the Department

hired Alyce Porter to permanently assume plaintiff's former

duties, (id. ¶ 5.), and plaintiff contends Porter, not Wyatt, was

her replacement, (Garcia Aff. at 4).[7]  Although Porter's race is

unapparent from the parties' filings, at oral argument defendant

admitted that Porter is white.  Plaintiff has also raised a

triable issue of how her qualifications compare to Porter's.[8]

Because a reasonable juror could infer that Porter, as

plaintiff's replacement, was similarly qualified, plaintiff has

met the "minimal" showing of this element required under

McDonnell Douglas.

       3.  Pretext

      Even if plaintiff meets her prima facie showing for a

race discrimination claim, a reasonable juror could not

ultimately conclude she was fired because of her race.  The

---

[7]    Because Porter is female, the same sex as plaintiff,
plaintiff cannot use the Department's decision to hire Porter as
her replacement as a basis for her prima facie showing of sex
discrimination.

[8]    Defendant submits Porter's application, indicating she
has several degrees, including a Masters in Public
Administration.  (Young Rebuttal Aff. Ex. A.)  However, because
plaintiff spent ten years in her position, a genuine dispute
exists regarding how plaintiff's experience compares to Porter's.

Department offers as its legitimate nondiscriminatory reasons that it fired plaintiff because her emails revealed that she divulged confidential information to a fellow employee; disparaged coworkers; and conducted outside employment on the Department's time.  (Taylor Aff. ¶ 9, Ex A.)  Plaintiff offers no direct evidence of race discrimination and thus must show through specific, substantial circumstantial evidence that the Department's proffered reasons for firing her are prextexual.  Lyons, 307 F.3d at 1113.

Plaintiff attempts to show the Department's explanation that she was fired in part because of her use of work hours to send real estate emails is unworthy of credence.  See Chuang, 225 F.3d at 1124 (holding that on summary judgment, where plaintiff lacks direct evidence of discriminatory motive, she may prove pretext by showing the employer's proffered reason is "unworthy of credence").  Plaintiff concedes she sent real estate emails during Department working hours but states she sent those emails during her lunch or personal break time.  (Garcia Aff. ¶ 15.)  Plaintiff points to a proceeding regarding plaintiff's eligibility for unemployment benefits, in which the Industrial Commission found her transgressions did not rise to the level of "misconduct" required to deny her unemployment benefits.  The agency found "it is unclear exactly what [the Department] expected of [plaintiff] in terms of email use for personal purposes."  (Garcia Aff. Ex. D at 6.)  The Commission noted that "most of the IDHW policy provisions dealing with [personal internet use] are ambiguous and/or contradictory," and that it did not appear plaintiff's email use interfered with her work.

Plaintiff also adduces evidence suggesting the Department failed to follow protocol in disciplining her for this conduct. The Department's policy states that where the "[outside] employment or activity impairs the employee's ability to perform, the employee will be requested in writing by the Appointing Authority to modify or cease that employment activity within five working days" before discipline ensues. (Garcia Aff. Ex. C.) The Department never gave plaintiff written notice and instead put her on leave and then terminated her. (Garcia Aff. ¶ 16.)

This evidence, however, fails to address the credence of the Department's other stated reasons for plaintiff's discharge, which the court finds to most worthy of credence. See Chuang, 225 F.3d at 1124. The Department states its ultimate decision to terminate plaintiff involved other concerns it developed at the same time it discovered her real estate emails, including her violation of her supervisor's directive not to share information relating to the JP Morgan contract review with fellow employees. (Taylor Aff. ¶ 9, Ex. A.) Plaintiff admitted that she divulged information to Walgamott despite being told to keep it secret, (Garcia Aff. Ex. E ("Garcia Dep.") at 60:3-6 (Docket No. 16-7)), and she has not offered any evidence creating a triable issue of the credence of this legitimate nondiscriminatory reason.

Therefore, even if the real estate emails were a flimsy reason for discharging plaintiff, plaintiff has failed to show the other reasons stated by her employer, including plaintiff's breach of confidentiality, were groundless or otherwise unworthy

of credence.  In failing to show those other reasons lacked

credence, plaintiff has failed to offer specific and substantial

circumstantial evidence that Department's proffered reasons are

pretext for discrimination.  See St. Mary's Honor Ctr. v. Hicks,

509 U.S. 502, 515 (1993) (holding "pretext" means "pretext for

discrimination").

Plaintiff also contends that a lack of any prior

discipline, (Garcia Aff. ¶ 4), coupled with the "minimal severity

of the alleged transgressions," raises an inference of pretext.

A plaintiff may use evidence of a stellar performance record to

show pretext to contradict an employer's representation that the

discharge was due to poor performance.  See Little v. Windermere

Relocation, Inc., 301 F.3d 958, 970 (9th Cir. 2001) (holding

plaintiff tendered sufficient evidence to rebut employer's

assertion that it fired her due to poor performance where

plaintiff showed she had received only positive feedback).

However, defendant did not discharge plaintiff because of her

poor performance, but rather because of several specific

transgressions.  Plaintiff's evidence does not undercut the

Department's proffered reasons for her discharge, and her

assertion that the transgressions were minimal in severity is

conclusory and unsupported by any evidence.[9]

---

[9]    Plaintiff points to the Commission's finding that the
transgressions did not amount to "misconduct" as proof that they
were minimal in severity. (See Pl.'s Opp'n at 19.)  However, the
Commission's findings were pertinent to plaintiff's eligibility
for unemployment benefits, not whether there were sufficient
grounds for her dismissal.  "What constitutes 'just cause' in the
mind of an employer for dismissing an employee is not the legal
equivalent of 'misconduct' under Idaho's Employment Security Law.
Therefore, whether the employer had reasonable grounds according

Lastly, plaintiff attempts to show pretext by pointing to the fact that Spannknebel was involved in deciding to investigate plaintiff's handling of the JP Morgan contract. Plaintiff argues that "[t]he clear inference is that the contract review was instigated for other pretextual purposes, i.e., to find something IDHW could possibly use as reason [sic] for [plaintiff]'s termination." (Pl.'s Opp'n at 18.) However, for the reasons discussed above, plaintiff has failed to show Spannknebel's statements regarding plaintiff were the cause of her discharge.

"[I]n those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact." Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994). Here, even if plaintiff was replaced by a substantially younger woman, plaintiff has failed in her burden to adduce evidence raising an inference that the Department terminated her because of her age.

C.    Defendant's Eleventh Amendment Defense to Plaintiff's Age Discrimination Claim

In its Reply, defendant argues that plaintiff's claim of age discrimination under the ADEA is barred by the Eleventh Amendment. The Eleventh Amendment bars any suit against a state or state agency absent a valid waiver or abrogation of its sovereign immunity. Seminole Tribe of Fla. v. Florida, 517 U.S.

---

to its own standards for dismissing a claimant is not controlling of the outcome of these cases." (Garcia Aff. Ex. D at 4("Garcia v. Dep't of Health & Welfare (2012)").)

44, 54 (1996); <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 (1890) (holding that the Amendment bars suits against a state by citizens of that same state as well as suits brought by citizens of another state).  This immunity applies regardless of whether a state or state agency is sued for damages or injunctive relief, <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978), and regardless of whether the plaintiff's claim arises under federal or state law, <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 121, (1984).

The Supreme Court has held that the ADEA did not abrogate the states' sovereign immunity to suits by private individuals.  <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 91 (2000).  The State of Idaho does not appear to have expressly waived its immunity to ADEA claims, and plaintiff conceded at oral argument that <u>Kimel</u> could operate to bar her ADEA claim. She argues, however, that defendant waived its sovereign immunity defense by failing to raise it in a timely motion.

"[A] state may waive its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity."  <u>Hill v. Blind Indus. and Servs. Of Md.</u>, 179 F.3d 754, 758 (9th Cir. 1999).  Defendant raised the Eleventh Amendment as an affirmative defense in its Answer, stating: "Some or all of plaintiff's causes of action are barred by operation of the Eleventh Amendment to the United States Constitution."  (Answer at 5.)  Defendant did not assert this defense again until its Reply brief in support of its motion for summary judgment. (Def.'s Reply at 10.)  The court gave plaintiff the opportunity to reply to defendant's Eleventh Amendment Immunity argument prior to oral argument in the form of a letter brief.  (October

30, 2014 Order (Docket No. 22).)

Plaintiff argues defendant's participation in litigation on the merits of plaintiff's ADEA claim constituted a waiver of its immunity. She analogizes to Johnson v. Rancho Santiago Community College District, where the court found the defendant waived its sovereign immunity defense even after "baldly assert[ing]" the defense in its Answer. 623 F. 3d 1011, 1021 (9th Cir. 2010). Johnson, however, is distinguishable from this case. In Johnson, the court found that parties had engaged in "extensive proceedings in the district court." Id. Here, motion for summary judgment was the first dispositive motion filed by defendants. Moreover, plaintiff conceded at oral argument that there is substantial factual overlap between her ADEA and Title VII claims, the latter of which were not barred by the Eleventh Amendment. Even if the court were to consider the proceedings in this case "extensive," defendant's participation in those proceedings "to defend on the merits" could not fairly be said to constitute an implicit waiver of immunity, because it was obligated to litigate the Title VII claims.

Additionally, in Johnson, the defendant "filed a motion to dismiss and a summary judgment motion without pressing a sovereign immunity defense," which amounted to a "tactical delay" that wasted judicial resources. Id. Here, defendant raised the defense, albeit in an untimely fashion, in the context of its motion for summary judgment, filed less than a year after the action was initiated, and before any other pretrial motions. Because plaintiff was not prejudiced, having had the opportunity to respond prior to oral argument, and because Johnson is

distinguishable, the court cannot conclude that defendant waived its sovereign immunity defense. Plaintiff's ADEA claim is thus barred by the Eleventh Amendment. See Kimel, 528 U.S. at 91.

D. Implied Covenant of Good Faith and Fair Dealing

Under Idaho law, the covenant of good faith and fair dealing is implied in all contracts and "requires parties to perform in good faith[] the obligations existing under the contract." Hurst v. IHC Health Servs., Inc., 817 F. Supp. 2d 1202, 1208 (D. Idaho 2011) (citing Cantwell v. City of Boise, 191 P.3d 205, 213 (Idaho 2008)). In the employment context, "[b]reach of the covenant occurs where a party violates, qualifies, or significantly impairs any benefit or right of the other party under an employment contract." Id. (internal quotation marks omitted).

Plaintiff asserts that defendant breached the covenant of good faith and fair dealing by discharging her from her employment for unlawful discriminatory reasons under the pretext of insubordination and performing inappropriate outside work on the defendant's time. (Compl. ¶ 42.) In essence, plaintiff's contract allegations echo her discrimination allegations. The court has found that a reasonable trier of fact could not conclude plaintiff's discharge was motivated by race, sex, or age. It also found plaintiff has not raised a genuine factual dispute of whether, taken together, the Department's asserted reasons for plaintiff's dismissal were a pretext for discrimination. Consequently, a reasonable juror could not conclude the Department breached its contractual duty of good faith to plaintiff.

1    At oral argument, counsel for plaintiff informed the

2    court that plaintiff was fired only a year before she would have

3    been entitled to certain retirement benefits, and suggested that

4    these suspicious circumstances support an inference of pretext.

5    (It would seem to the court that, to the contrary, such

6    circumstances suggest plaintiff was fired for some reason other

7    than discrimination.)  Plaintiff has never suggested anywhere--

8    not in her complaint or her opposition to the motion for summary

9    judgment or even at oral argument--that these allegedly

10   suspicious circumstances support her claim for breach of the

11   implied covenant of good faith and fair dealing.  It is not for

12   the court to construct an argument for plaintiff from her bare

13   assertions, so the court will not address the merits of such an

14   argument.[10]

15        IT IS THEREFORE ORDERED that defendant's motion for

16   summary judgment be, and the same hereby is, GRANTED.  The Clerk

17   is directed to enter judgment in favor of the defendant and

18   against the plaintiff in this action.

19   Dated:  November 7, 2014

20   _____

     WILLIAM B. SHUBB

21   UNITED STATES DISTRICT JUDGE

22

23

24

25

---

26   [10]   Even if the court were to find reason to address this
     argument, it would decline to exercise supplemental jurisdiction

27   over this state law claim pursuant to 28 U.S.C. § 1367(c)(3),
     because the court has dismissed all claims over which it had

28   original jurisdiction.

                              24